**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norma Coleman and Booker Coleman, | **No. CV-15-01332-PHX-NVW** |
| Plaintiffs, | **ORDER** |
| v. | |
| Home Health Resources, Inc., and The Crossing: Hospice Care, Inc., | |
| Defendants. | |

Plaintiffs Norma and Booker Coleman sued Norma Coleman's former joint employers, Defendants Home Health Resources, Inc. and The Crossing: Hospice Care, Inc., alleging retaliation under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. On August 28, 2017, this Court granted summary judgment in favor of Defendants. *See generally Coleman v. Home Health Res. Inc.*, 269 F. Supp. 3d 935 (D. Ariz. 2017). Now before the Court are Defendants' Motion for Award of Attorneys' Fees (Doc. 118), the Response, and the Reply.

**I.    FACTUAL BACKGROUND**

The summary judgment order (Doc.116) states the underlying facts of the case. The Court assumes familiarity with that order but reiterates the following for ease of reference.

### A. Pre-Litigation

Plaintiff Norma Coleman ("Coleman") is an African-American woman. She was jointly employed by Defendants Home Health Resources, Inc. and The Crossing: Hospice Care, Inc. ("Defendants") from February 7, 2007, until July 11, 2011.

Coleman was first hired as their chief financial officer, which primarily involved bookkeeping. Three months later, she received a positive performance evaluation. Roughly six months after starting, she was promoted to Human Resource/Payroll Manager. Coleman's new position carried her original bookkeeping duties but also included managerial duties in the human resources department. Her next three performance reviews were uniformly positive.

Coleman began to suspect she was being paid less than Defendants' younger, non-African-American employees. She approached her supervisor in early fall of 2010 and asked for a pay raise—a request that was denied because of a supposed pay freeze. But Coleman had heard of other employees receiving raises, so she asked again and was again rejected. She received a discretionary bonus at the end of 2010.

Shortly after first requesting a raise, on October 15, 2010, Coleman's supervisor issued her a "written warning for work performance," which identified four areas "requiring immediate improvement." Coleman failed to include complete information in personnel files, ran a backlog of work, exhibited an inappropriate attitude, and demonstrated unfamiliarity with the requirements of her job. Coleman says Defendants had a policy of providing verbal warnings before written ones, a policy not adhered to in this instance.

Coleman filed a Charge of Discrimination with the EEOC on November 1, 2010 (the "2010 EEOC Charge"). She alleged race, gender, and age discrimination, as well as retaliation. The EEOC dismissed the Charge on October 19, 2011.

On November 10, 2010, without knowledge of the 2010 EEOC Charge, Defendants gave Coleman a verbal warning. But Coleman pointed to other conduct that she interpreted as retaliatory for having made the Charge:

- o Defendants' CEO expressed "bewilderment" about the Charge and suggested, in a way that "intimidated" and "scared" Coleman, that Coleman withdraw it.
- o On December 13, 2010, Coleman's supervisor admonished her for failing to update files in a timely fashion, which may have been someone else's fault.
- o On May 24, 2011, Defendants gave Coleman a written warning for missing a work-related telephone hearing. Coleman was actually seven minutes late, not missing entirely.
- o Defendants assigned Coleman to work the office reception desk on top of her other duties. She claims to have been the only managerial employee required to work at the desk.
- o Defendants excluded Coleman from meetings relevant to her human resources work. They also excluded her from employee exit interviews, despite having previously required that she attend them.
- o Management staff stopped greeting Coleman and "virtually refused to speak to her." Once, Coleman greeted the CEO, and she responded, "[W]hy are you still here."
- o Defendants invited everyone except Coleman to a co-worker's office birthday party.
- o Coleman's supervisor told employees to stop directing employee-related documents to Coleman.
- o Coleman's May 31, 2011 performance evaluation showed a "needs improvement" rating in nine areas. She exceeded the standard in one area,

and met the standard in three others. Her supervisor refused to go over the evaluation with Coleman when Coleman asked her to do so. Coleman asked the CEO to review the evaluation with her. The CEO said she would do so upon returning from a vacation. But Coleman was terminated on July 11, 2011, before any meeting ever took place.

Coleman filed a second Charge of Discrimination with the EEOC on September 26, 2011 (the "2011 EEOC Charge"). The 2011 EEOC Charge alleged Defendants retaliated against Coleman for the 2010 EEOC Charge. On October 19, 2011, the EEOC found reasonable cause to believe Defendants retaliated against Coleman by terminating her for engaging in a protected activity. It "made no finding regarding any other allegations raised in this charge." (Doc. 131-1, Ex. A.)

### B. Litigation

Nearly four years later, on July 15, 2015, Coleman filed this action. Coleman's original Complaint categorized itself as redressing "racial discrimination and retaliation in the workplace." (Doc. 1 at ¶ 1.) It contained 22 paragraphs of various facts and events without differentiating what was discrimination and what was retaliation. The discrimination allegations originally included in the 2010 EEOC charges were time barred. On December 16, 2015, in response to a motion, Coleman amended her Complaint to list her husband as a co-plaintiff. (Doc. 33.) On January 19, 2016, Coleman again amended her Complaint with the same 22 paragraphs of substantive allegations as the original and first amended complaints. The only substantive difference between the 22 paragraphs of the Second Amended Complaint and the original Complaint was in the first line of the first paragraph. Instead of characterizing the complaint as alleging "racial discrimination and retaliation in the workplace," it now characterized it as redressing only "retaliation in the workplace." (Doc. 38.)[1] Thus, only

---

[1] Plaintiffs also now said that "Coleman *believed* that Defendants were discriminating against her" rather than just alleging they did. (*Id.* at ¶ 10 (emphasis added).)

the retaliation claims, brought under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"), remained.

This Court granted summary judgment in favor of Defendants on August 28, 2017. (Doc. 116). It explained that Coleman's only protected activity was filing the 2010 EEOC Charge. 269 F. Supp. 3d at 941. It was not a protected activity to ask for higher pay or to challenge the truth of the pay freeze, which Coleman styled an "informal complaint," because she "pointed to nothing in the record here indicating she even hinted at discrimination on the basis of any status protected under Title VII or the ADEA." *Id.* at 941-42. Next, the Court analyzed which of Defendant's actions could be construed as adverse employment actions—non-trivial actions that would deter reasonable employees from making Title VII complaints. It concluded that only the termination and negative performance reviews and admonishments (the December 13, 2010 admonishment, the May 24, 2011 written warning, and the May 31, 2011 performance evaluation) qualified. *Id.* at 943. All other claims failed either because they reflected mere ostracism, lacked evidentiary support, or were otherwise too trivial to deter a reasonable employee as a matter of law. *Id.* at 943-45.

Next, the Court found that there was no prima facie causal link between Coleman's discharge and her 2010 EEOC Complaint because there was an eight-month gap between the Complaint and her termination. *Id.* at 945. With only the performance reviews and admonishments remaining, the Court determined that Defendants indisputably had a legitimate, non-retaliatory rationale: Coleman "was not able to meet the demands of the job." *Id.* at 946. In addition to various specific instances, pre- and postdating her 2010 EEOC Complaint, Defendants had an independent, outside consultant "who identified at least twelve significant deficiencies in Coleman's job performance that could expose Defendants to liability and advised them to hire a 'human resources professional' to take over." *Id*. Consequently, as recommended by the independent consultant, Defendants eliminated Coleman's position entirely "and brought

in a number of outside groups to run the department before settling on someone satisfactory." *Id.* Finally, the Court found no genuine dispute that the proffered rational was non-pretextual: Coleman received good performance reviews until Defendants discovered the undisputed deficiencies in her work. *Id.* at 947. "Overpromotion, if that's what it was, does not vest an employee with a Title VII or ADEA right to tenure after the employer discovers its mistake and takes action to get the job done." *Id.*

### C. This Motion

Defendants now move for fees on three bases. First, they seek fees against Plaintiffs under Title VII and the ADEA. Second, they seek fees against Plaintiffs' counsel personally under 28 U.S.C. § 1927. Finally, they seek fees relating to this Court's order awarding attorneys' fees during discovery pursuant to Federal Rule of Civil Procedure 37(a)(5). (Doc. 68.) In total, they "seek an award of approximately $130,000." (Doc. 118 at 2.)

## II. FEES UNDER TITLE VII AND ADEA

### A. Legal Standards

Defendants seek fees under both Title VII and the ADEA. They contend Plaintiffs' claims were completely meritless. For the following reasons, the Court will consider awarding fees in this case only under Title VII and only in a partial amount.

#### 1. Attorneys' Fees Under Title VII

Title VII contains an attorney's fees provision. In any action brought under the statute, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).

Civil rights law must strike a balance between chilling legitimate actions on the one hand and indulging unfounded accusations on the other. *Blue v. Dep't of Army*, 914 F.2d 525, 535 (4th Cir. 1990). Consequently, it is much more difficult for prevailing defendants to recover fees in Title VII cases than it is for prevailing plaintiffs. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1654 (2016) (Thomas, J., concurring) (noting

the asymmetry). Defendants may recover attorneys' fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

Thus, there are three bases for assessing fees against a plaintiff in Title VII action: frivolity, unreasonableness, or lack of foundation. "Without foundation" is nebulous and begets the very post hoc fallacy the Court warned against. *See id.* at 421-22 ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."). But "frivolous" and "unreasonable" are both terms of art in the law. "Frivolous" means "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." Black's Law Dictionary 692 (8th ed. 1999). "Unreasonable" means "[n]ot guided by reason; irrational or capricious." *Id.* at 1574. "Courts should therefore ask whether the action was irrational, capricious, not guided by reason, not serious, or not reasonably purposeful." *Watson v. Cty. of Yavapai*, 240 F. Supp. 3d 996, 1000 (D. Ariz. 2017). Of course, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christianburg*, 434 U.S. at 422 (emphasis in original).

### 2. Attorneys' Fees Under the ADEA

The "ADEA does not provide attorney's fees to a prevailing defendant." *Hoover v. Armco, Inc.*, 915 F.2d 355, 357 (8th Cir. 1990). Nevertheless, in certain ADEA cases, some courts have looked to an exception to the general American rule that the prevailing party may not recover attorneys' fees. *See, e.g., id.* at 356-57 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)); *Glass v. Intel Corp., Inc.*, No. CV-07-1835-PHX-MHM, 2010 WL 11515224, at \*2 (D. Ariz Feb. 9, 2010) (same). In *Alyeska Pipeline*, the Supreme Court noted that the federal courts have the inherent

- 7 -

power, unless expressly forbidden by Congress, to sanction a losing party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 421 U.S. at 258-59 (internal quotation marks omitted). But there the Court also explained that the American rule "is deeply rooted in our history and in congressional policy." *Id.* at 271.

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Court cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. As the Ninth Circuit has clarified, imposing sanctions under the inherent power when a litigant has a colorable claim requires a finding that the "litigant is substantially motivated by vindictiveness, obduracy, or mala fides." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)).

Defendants urge the Court to use its inherent power to award fees under the ADEA. (Doc. 118 at 2, 9-10.) This case does not call for the extraordinary departure from the American rule that occurs when a court uses its inherent powers. The facts of this case do not match the facts of cases where other courts have used the inherent power to sanction.

Defendants seek fees for the same reasons under Title VII and the ADEA. Fees are sometimes available, as explained, for prevailing defendants under Title VII. As discussed below, Plaintiffs unreasonably pressed their claim past discovery. But the evidence of intense bad faith is not persuasive. The analysis that follows will therefore rely only on fee shifting under Title VII.

**B. Analysis**

Defendants believe they should be awarded fees for two reasons. First, Coleman supposedly lied to them and failed to amend her Complaint to remove her time-barred claims, as she stipulated she would. Second, Coleman's claims were frivolous and unreasonable.

**1. Although it was unclear whether Coleman dismissed her time-barred claims, the demands of the statute are too stringent to award fees on that basis.**

Coleman's original Complaint asserted claims of discrimination. (Doc. 1.) Defendants contend that the discrimination claims were time barred by failure to file an action after the first EEOC charge. Plaintiffs do not dispute this.

During the scheduling conference on October 27, 2015, Defendants announced they intended to move to dismiss all claims except those based on retaliation. (Doc. 29 at 5.) Coleman admitted that her "primary cause of action is one of retaliation . . . ." (*Id*.) She did not "really have a good harassment claim in the first place." (*Id*.) Accordingly, on November 12, 2015, Defendants' counsel sent Plaintiffs' counsel a message asserting that the discrimination claims were time barred and that alleging them violated Rule 11. (Doc. 118-4, Ex K.) Plaintiffs' counsel responded on November 20, 2015, stipulating "to the dismissal of all claims, except those Title VII claims predicated" on the 2011 EEOC Charge, which was solely for retaliation. (Doc. 82-2, Ex. B.) Defendants say they relied on Plaintiffs' counsel and stipulated to allowing Coleman to amend her Complaint. (Doc. 118 at 6.)

The Second Amended Complaint states in its first few words, "This is an action seeking to redress retaliation in the workplace . . . ." (Doc. 38 at ¶ 1.) The original Complaint, by contrast, began, "This is an action seeking to redress *racial discrimination* and retaliation in the workplace . . . ." (Doc. 1 at ¶ 1 (emphasis added).) Yet as noted above, all the substantive allegations in the Second Amended Complaint are the same as those in the original Complaint. No facts were dropped out.

Nevertheless, few if any specific facts relating to discrimination were ever alleged in the Complaints.[2] The Complaints claimed only that Defendants had lied about the pay

---

[2] Coleman had alleged specific facts elsewhere: the 2010 EEOC charge alleged her younger, male, non-African-American subordinate was paid more than she was. (Doc. 38-1, Ex. A.)

freeze and that Defendants paid Coleman less, or Coleman believed they paid her less, than her younger, male, non-African-American colleagues. By contrast, the Complaints listed specific examples of retaliation: "Defendants subjected Ms. Coleman to a series of undeserved disciplinary reprimands, gave her an inaccurate, unfair, negative performance evaluation, assigned her a series of clerical tasks unrelated to her duties as Human Resource Manager, and excluded her from company meetings that were in the area of human resources and Ms. Coleman's expertise." (Doc. 1 at ¶ 16; Doc. 38 at ¶ 17.)

On summary judgment Defendants argued that Plaintiffs had alleged time-barred claims of discrimination.[3] In light of the fully repeated substantive allegations and the vagueness of what allegations related to what statute in the catch-all, one-count pleading, Defendants were justified in thinking Plaintiffs were reasserting the time-barred claims. Plaintiffs should have submitted a stipulation to partially dismiss or unilaterally dismissed partially under Rule 41. But Defendants could have submitted a stipulation as well or inquired again before briefing the time-barred claims on summary judgment. The greater fault lies with Plaintiffs, whose conduct did not comport with customary candor. But the Court finds no example of similar conduct and vagueness in which fees were awarded. In light of the extremely stringent demands of the statute, the Court cannot conclude they are met here.

> **2. Plaintiffs should have known most of their action was meritless by the close of discovery, and Defendants are therefore entitled to attorneys' fees for work performed in moving for summary judgment on the frivolous claims.**

At the threshold, Coleman's non-discharge retaliation claims, though weak, required analysis and comparison to precedents. Defendants' Motion does not address

---

[3] Defendants incorrectly claimed in their Motion for Summary Judgment that Coleman continued "to assert a claim under 42 U.S.C. § 1981." (Doc. 82 at 10.) The Second Amended Complaint dropped the § 1981 cause of action, which was not separately pled (nothing was separately pled) but identified only by statutory citation in the second paragraph.

- 10 -

them specifically. They were not frivolous, and attorneys' fees cannot be awarded based on those claims.

The claim of retaliation by discharge may not have been frivolous and unreasonable at the outset, but it emerged to be so after discovery closed.

Despite the ultimate weakness of her case, Coleman did have an EEOC finding of reasonable cause to believe Defendants had retaliated against her for engaging in a protected activity. This EEOC finding is probative, especially at the start of the case. *See Plummer v. W. Int'l Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir. 1981). The EEOC determination regarding Coleman's retaliation claim covered both Title VII and the ADEA. (Doc. 131-1, Ex. A ("I have considered all the evidence obtained during the investigation and find there is reasonable cause to believe Respondent retaliated against Charging Party in violation of Title VII and the ADEA . . . .").) Defendants therefore go too far in asserting that Plaintiffs had no basis from the beginning to file this action.

However, Coleman should have known after the close of discovery that her case for retaliatory discharge was no longer rational, serious, or guided by reason. *Watson*, 240 F. Supp. 3d at 1000. *See also id.* at 1002 ("[C]ontinuing to litigate after discovery turns up nothing may render an action unreasonable from that point forward."). As the Court explained in its Summary Judgment Order, Defendants "brought in an independent, outside consultant to assess the state of the Human Resources department. The consultant identified at least twelve significant deficiencies in Coleman's job performance that could expose Defendants to liability and advised them to hire a 'human resources professional' to take over." *Id.* at 946 (internal citation omitted). Plaintiffs offered no basis to believe that this finding was pretextual or that the auditor was biased. (Indeed, Plaintiffs failed to depose the auditor. (Doc. 118 at 7 n.3.)) Defendants adopted the auditor's plan, outsourcing Coleman's position and cycling through "a number of different outside groups before settling on someone satisfactory." 269 F. Supp. 3d at 946. Plaintiffs also pointed to no evidence that the deficiencies in Coleman's performance

were manufactured or inaccurate. *Id.* at 947. There was simply no genuine dispute that Coleman was not adequately performing her job and that Defendants received and relied on independent, non-biased expert advice to terminate the position and outsource the work. *Id.*

In short, Defendants' reasons to terminate Coleman and outsource the job were unquestionably legitimate, non-discriminatory, and true. Plaintiffs presented no colorable basis of pretext. As a result, it was objectively unreasonable for Plaintiffs to continue to press the question of retaliatory discharge into the summary judgment stage.

Therefore, Defendants are entitled to an award of attorneys' fees incurred in pursuing summary judgment on the discharge claim but not on the non-discharge retaliation claims. *Fox v. Vice*, 563 U.S. 826, 829 (2011) (holding that, when a plaintiff asserts "both frivolous and non-frivolous claims," a court may grant fees "only for the costs that the defendant would not have incurred but for the frivolous claims").

The Court reviewed Defendants' attorneys' fees sustained from September 19, 2016, the date on which their attorneys began work on the Motion for Summary Judgment. By the Court's calculation, Defendants were actually billed for 124.9 hours, at various rates, in preparation for summary judgment. (This excludes hours related to the oral argument. Those hours are discussed below.) The Court disregarded the few entries, added after September 19, 2016, for discovery disputes preceding the motion for summary judgment. It also disregarded the spoliation research conducted on October 6, 2016, because it is not clear whether this research tied into the summary judgment argument on damages.

Defendants state that they spent 5.6 hours, billed at John Doran's rate of $545/hour, on the portion of the summary judgment motion addressing the time-barred claims. (Doc. 118 at 12 n.5; Doc. 123-4, Ex. I.) The Court will allow those fees. As explained, Plaintiffs' poorly amended Complaint was not an independent ground to

- 12 -

assess fees. It was, however, reasonable and necessary to address the potentially extant time-barred claims on summary judgment.

All told, the facially allowable fees related to summary judgment come to $54,621. But one thorn remains: it is impossible to discern from Defendants' counsel's billing logs how work on summary judgment was divided between the frivolous and non-frivolous claims. The Court can grant only the fees caused solely by the frivolous claims. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1189 (2017) ("A sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue."). The "essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.* at 1187 (quoting *Fox*, 563 U.S. at 838) (internal quotation marks omitted). "Accordingly, a district court may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (internal quotation marks omitted) (modification in original).

The aspects of claimed retaliation that were not revealed to be clearly groundless upon completion of discovery were not weighty. It is not feasible to break down those services time entry by time entry. Rather, the Court will err in favor of caution by reducing the awarded fees by more than enough to take account of non-frivolous claims of retaliation. A 20% reduction of the fees incurred on summary judgment will assure that the fee award reaches only the fees incurred on summary judgment concerning the retaliation claim that was by then shown to be groundless and unreasonable. Fees will be awarded pursuant to Title VII in the amount of $43,700.00, plus a reduced amount of $6,925.00 for oral argument on the motion for summary judgment as discussed below.

**3.      Once excessive billing for oral argument is subtracted, the fee award is reasonable.**

Local Rule 54.2(c)(3) sets forth the factors the Court considers in evaluating the reasonableness of the requested attorneys' fees award. These include, but are not limited to, (A) the "time and labor required of counsel," (B) the "novelty and difficulty of the

- 13 -

questions presented," (C) the "skill requisite to perform the legal service properly," (D) the "preclusion of other employment by counsel because of the acceptance of the action," (E) the "customary fee charged in matters of the type involved," (F) whether the fee is fixed or contingent, (G) any "time limitations imposed by the client or the circumstances," (H) the "amount of money, or the value of the rights, involved, and the results obtained," (I) the "experience, reputation and ability of counsel," (J) the case's "undesirability," (K) the "nature and length of the professional relationship between the attorney and the client," (L) awards "in similar actions," and (M) any "other matters deemed appropriate under the circumstances."

Plaintiffs say it is "shocking" how much time Defendants' attorneys spent on this case. (Doc. 131 at 6.) They argue defense counsels' time sheets show over-staffing and over-billing, but they fail to point to specific examples. (*Id.* at 7.) This failure violates Local Rule 54.2(f), which requires the response in opposition to "identify with specificity . . . each and every disputed time entry or expense item." Plaintiffs' "objection," such as it is, is rejected. In any event, Defendants explain that one attorney was on extended leave during part of the case, and the other attorneys performed distinct and separate tasks. (Doc. 132 at 10.)

Plaintiffs' single concrete, well-taken objection is that Defense counsel spent a total of 33.5 hours preparing for and attending oral argument on Defendants' summary judgment motion. (Doc. 131 at 7.) The Court agrees this was an excessive number of hours. In its discretion, the Court will reduce the total number of oral-argument-preparation hours to be charged to Plaintiffs to 15. Ten of these hours will be at Doran's rate of $545/hour ($5,450 total), as Doran was the lead attorney who ultimately argued the case. The remaining five hours will be split between Lindsay Hesketh ($315/hour) and Lori Keffer ($265/hour). Hesketh actually billed 13.6 hours related to the oral argument, and Keffer billed 6.3. Accordingly the Court will allow three hours billed at

- 14 -

Hesketh's rate ($945 total) and two hours billed at Keffer's ($530 total). In sum, Defendants are entitled to $6,925 for fees related to the oral argument.

Thus, Defendants will be awarded $43,700.00 for fees related to summary judgment and $6,925.00 for fees related to oral argument on the motion, for a total of $50,625.00

This award comports with the requirements of Local Rule 54.2(c)(3). The time required has been adjusted to be reasonable and to reflect the difficulty of the case and the skill required. The rates are not excessive given the levels of experience of the attorneys involved. Finally, the award is comparable to awards to defendants in similar civil rights cases. *See, e.g., Russell v. Mountain Park Health Ctr. Props., LLC*, No. CV 07-00875-PHX-NVW, 2012 WL 369576 (D. Ariz. Feb. 6, 2012) ($50,000, the amount requested); *Johnnie v. Target Corp.*, No. CV 06-00826-PHX-MHB (D. Ariz. Mar. 31, 2008) ($114,588).

### III. FEES UNDER 28 U.S.C. § 1927

#### A. Legal Standard

28 U.S.C. § 1927 provides, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent. Tactics undertaken with the intent to increase expenses may also support a finding of bad faith." *Id.* (internal quotation marks and citations omitted). The district court must make a specific finding of subjective bad faith; negligence is not enough. *MGIC Indem. Corp v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991). Thus, for his behavior to be sanctionable under § 1927, an attorney must knowingly engage in

vexatious dilatory conduct, or he must demonstrate recklessness so severe that it necessarily implies subjective bad faith.

**B. Analysis**

Defendants seek fees from Plaintiffs' counsel for asserting time-barred claims. They say this violated of Rule 11, especially when he continued to assert them. (Doc. 118 at 10-11.) Defendants do not present persuasive evidence that Plaintiffs' counsel filed the Complaints with a vexatious, dilatory purpose or in subjective bad faith.

Defendants also take issue with Plaintiffs' counsel supposedly shifting around the time of the parties' mediation in bad faith. Plaintiffs originally chose a mediator but, according to Plaintiffs, changed their mind and "ultimately concluded that [the mediator's] retainer fee" was unreasonable. (Doc. 131 at 5.) Defendants assert this is a lie, as the mutually-agreed-upon replacement mediator charged similar fees. (Doc. 132 at 6-7.) No evidence is before the Court to assess this assertion. The parties both point to the courtesies they refused to extend each other, including not scheduling Coleman's deposition when she would already have been in Phoenix for the mediation. (Doc. 131 at 5.) The mediation was canceled because the Court ordered Defendants' CEO to be present, and the CEO was out of the country. (Doc. 132 at 7.) Defendants make the muddled, unsupported claim that Plaintiffs' counsel "continued to drag his feet on mediation scheduling," causing Defendants to give up. (*Id.*) Again, Defendants do not provide enough to prove Plaintiffs' counsel acted with a vexatious, dilatory purpose or to allow the Court to infer subjective bad faith.

Defendants provide a list of Plaintiffs' counsel's failure to conform to deadlines and requests for extensions in various other matters. (*Id.* at 8-9.) To the trivial extent the list is relevant, it does not demonstrate vexatious conduct or bad faith. Negligence is not enough for § 1927 sanctions. *MGIC Indem. Corp.*, 952 F.2d at 1122.

Finally, Defendants and Plaintiffs both present the Court with email exchanges that cast the other side in an unfavorable light. Defendants contend these emails

demonstrate "a vexatious personal animus." (Doc. 118 at 12.) Plaintiffs themselves claim the "facts warrant fees" against defense counsel. (Doc. 131 at 6.) Neither side emerges from these exchanges looking good. As explained above, Plaintiffs' counsel did not engage in sanctionable conduct, and rude emails are not a basis for sanctions. The Court admonishes Mr. Montoya for his grave breaches of professionalism and civility. (*See* Doc. 118-4, Ex. J; Doc. 131-1, Exs. E, F.) But it cannot award sanctions under 28 U.S.C. § 1927.

## IV. FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 37

### A. Legal Standard

A party may move for an order compelling discovery after a good-faith conference with the party failing to disclose. Fed. R. Civ. P. 37(a)(1). If the motion is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5).

### B. Analysis

After complying with Rule 37(a)(1), Defendants filed a Discovery Motion. (Doc. 68.) Plaintiffs responded, and the Court granted the motion. (Doc. 78.) The dispute centered on Plaintiffs responding to Defendants' discovery requests by repeatedly pointing them to 721 undifferentiated documents. The Court concluded that Plaintiffs' failure to specify which documents were responsive to which request was not substantially justified. (*Id.* at 1, 2.) It noted in its Order that attorneys' fees incurred in connection with Defendants' motion would "be awarded against Plaintiffs in an amount to be quantified at the conclusion of this case." (*Id.* at 2.) The case having concluded, Defendants now seek $3,840. Their attorneys spent 10.8 hours, billed at various rates, on the discovery dispute. (Doc. 123-3, Ex. D.)

Plaintiff misreads the itemized fee statement, contending that "Defendants' counsel claims that they spent over ten hours organizing documents Ms. Coleman produced." (Doc. 131 at 6.) It is true that Defendants claim Plaintiffs failed to comply with the Court's order and that they had to sort through the documents themselves. (Doc. 118 at 13.) But they specifically note that the $3,840 "does not include any fees associated with sorting Plaintiffs' document dump after Plaintiffs failed to follow this Court's Order." (*Id.*) A review of their itemized statement confirms Defendants are correct.

Defendants are entitled to what they request. The Court noted in its discovery order that all of Defendants' claims would be well founded if they had not been mooted by Plaintiffs' Response. (Doc. 78.) Defendants should not have needed their attorneys to put the work into the motion in the first place, and they will be awarded the $3,840 in fees that went into it.

IT IS THEREFORE ORDERED that Defendants' request for award of attorney's fees on its discovery motion is granted in the amount of $3,840.00.

IT IS FURTHER ORDERED that Defendants' Motion for Attorneys' Fees (Doc. 118) is granted in the additional amount of $50,625.00.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment in favor of Defendants Home Health Resources, Inc. and The Crossing: Hospice Care, Inc. against Plaintiffs Norma Coleman and Booker Coleman, jointly and severally, in the amount of $54,465.00 plus interest at the federal rate of 2.24% per annum from the date of judgment until paid.

Dated: May 11, 2018.

_____
Neil V. Wake
Senior United States District Judge